IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | Case No. 16-15444-elf |
| Anna Lee Townsville<br>    Debtor. | Chapter 13 |
| U.S. Bank National Association as Trustee of American Homeowner Preservation Trust Series 2013C., its assignees and/or successors in interest | |
|     Movant, | |
| vs. | |
| Anna Lee Townsville<br>William C. Miller, Esq., Chapter 13 Trustee, | |
| Respondents. | |

MOTION FOR RELIEF FROM AUTOMATIC STAY
AS TO PROPERTY KNOWN AS 1228 EAST MOUNT AIRY AVENUE IN PHILADEPHIA,
PENNSYLVANIA, 19150

U.S. Bank National Association as Trustee of American Homeowner Preservation Trust Series 2013C., its assignees and/or successors in interest, by and through its attorney, Michael Boland, files this Motion for Relief from Stay, Adequate Protection and other relief and for cause states:

1. The Respondent-Debtor, Anna Lee Townsville, filed a Petition for relief under 11 U.S.C. Chapter 13 on August 01, 2016, Case Number 16-15444-elf, in the United States Bankruptcy Court for the Eastern District of Pennsylvania. The Trustee is William C. Miller, Esq. On September 02, 2016 the Respondent-Debtor filed their Chapter 13 Bankruptcy Plan,

attached hereto as **EXHIBIT A.** Under Sections 8 & 9 of the Respondent-Debtor's Chapter 13

Bankruptcy Plan, the Debtor specifically states that the Debtor was required to make payments to

the Movant. The debtor has failed to make any of the required payments under the plan.

2. This Court has jurisdiction over this contested matter pursuant to 11 U.S.C. §§ 105 and

362, 28 U.S.C. § 157, and Rule 9014 of the Bankruptcy Rules of Procedure.

3. The Debtor has executed and delivered or is otherwise obligated with respect to that

certain promissory note in the original principal balance of $23,500 ("the Note"). A copy of the

Note is attached hereto as **EXHIBIT B.** Movant is an entity entitled to enforce the Note.

4. Pursuant to that certain Mortgage dated May 30, 2007, and recorded in the office of the

county clerk of Philadelphia County, Pennsylvania ("the Mortgage"), all obligations (collectively

"the Obligaions") of the Debtor under and with respect to the Note and the Mortgage are secured

by Property. A copy of the Mortgage is attached hereto as **EXHIBIT C.**

5. All rights and remedies under the Mortgage have been assigned to the Movant

pursuant to an assignment of mortgage. A copy of the Assignment of Mortgage is attached hereto

as **EXHIBIT D**.

8. As of October 31, 2017, the outstanding Obligations are:

| | |
|---|---|
| Principal Balance | $33,350.27 |
| Interest to 10/31/2017 | $29,847.77 |
| Other (See attached Schedule A) | $3,379.92 |
| Prepayment Penalty | $ |
| Funds owed by Borrower | $ |
| Funds owed to Borrower | $ |
| **Total Payoff** | **$66,577.96** |

| Per Diem | $6.40 |
|----------|-------|

9. In addition to the other amounts due to Movant reflected in this declaration, as of the date hereof, in connection with seeking the relief requested in the Motion, Movant has also incurred legal fees and costs. Movant reserves all rights to seek an award or allowance of such fees and costs in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

10. The following chart sets forth the number and amount of contractual payments due pursuant to the terms of the Note that have been missed by the debtor as of 10/19/2017:

| # of Missed Payments | From: | To: | Monthly Payment Amt. | Total Missed Payments |
|----------------------|-------|-----|----------------------|------------------------|
| 15 | 8/18/16 | 10/18/16 | $229.16 | $3312.01 |
| Less Debtor Suspense: | | ($0.00) | | |
| TOTAL: | | $3312.01 | | |

11. The estimated market value of the property is $151,732 [Zillow]. The Debtors claimed exemption of $23,675.00 in 2015.

12. Upon information and belief, the encumbrances on the property listed in the schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed in priority are: (I) Movant (Payoff); 66,577.96? There is no or inconsequential equity in the property.

13. The post-petition payment amount is $229.16. The loan is post-petition due for 8/18/2016.

14. Cause exists for relief from the automatic stay for the following reasons:

a. Respondent failed to make required payments under the plan.

b. The fair market value of the property is declining and payments are not being made the the Movant sufficient to protect Movant's interest against that decline.

c. Pursuant to 11 U.S.C. § 362 (d)(2)(A), Debtor has inconsequential equity in the property; and pursuant to § 362(d)(2)(B), the property is not necessary for an effective reorganization.

WHEREFORE, the Movant, U.S. Bank National Association as Trustee of American Homeowner Preservation Trust Series 2013C., its assignees and/or successors in interest, prays that this Court issue an Order terminating or modifying the stay and granting the following:

A. Relief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited to allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the property.

B. That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

C. That the 14 Day Stay described by Bankruptcy Rule 4001(a)(3) be waived.

D. For such other and further relief as the Honorable Court deems proper.


Dated: October 19, 2017


Respectfully Submitted,

*/s/ Michael Boland*
Michael Boland

ID# 319999
1324 Locust Street #1602
Philadelphia, PA 19107
mbolandlegal@gmail.com
(610)781-4885

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: Anna Lee Townsville       :     CHAPTER 13
              Debtor              :     BANKRUPTCY NO. 16-15444

## CHAPTER 13 PLAN OF THE DEBTOR

1.     Debtor shall submit to the supervision and
control of the trustee the following sums:
During the first through the 60th month of the plan -- $5.00
monthly until a total of $300.00 has been paid to the trustee.

2.     The various claims of Debtor's creditors shall
be classified as follows:

a.     CLASS 1 - Claims filed and allowed which are
entitled to priority under 11 U.S.C. §507.  The administrative
costs of the trustee are the only priority claims or
administrative claims contemplated by this plan.  Any creditor
entitled to priority under §507 of the Bankruptcy Act contrary to
the provisions of this plan shall be deemed to have waived any
such priority, unless such entity timely objects to the plan
prior to the entry of the order of confirmation.

b.     CLASS 2 - The claim of U.S. Bank Trust N.A.
as Trustee (hereinafter "U.S. Bank")or American Homeowner
Preservation Fund, LP (hereinafter "AHPF") or the agent or
successor for either or both of them filed and allowed, for pre-
petition payment of principal, interest and insurance payments
actually expended which are due under the provisions of Debtor's

mortgage agreement originally with Colonial National Bank USA, including all such amounts which became legitimately due prior to the commencement of the above captioned case, to the extent that such claim is a secured claim within the meaning of 11 U.S.C. §506(a) secured by a lien on 1228 East Mount Airy Avenue, Philadelphia, PA 19150 which is not void or avoidable under the provisions of the Code and which is not for interest, fees, costs or charges which are not permitted under 11 U.S.C. §506(b);

      c.   <u>CLASS 3</u> - The claim, filed and allowed, by U.S. Bank or AHPF or the agent for wither of them or successor in interest for eiher for the **total unpaid balance**, **if any**, due on the judgment in mortgage foreclosure that was entered on that note and mortgage in the case of *U.S. Bank Trust National Association , as Owner Trustee v. Anna L. Townsville, C.C.P. Philadelphia County,  Donald, Phila. C.C.P. (F.J.D.) April Term 2012, No.01039* to the extent the allowed claim is a secured claim, within the meaning of 11 U.S.C. §506(a), secured by a lien on debtor's interest in 1228 East Mount Airy Avenue, Philadelphia, PA 19150 which is not void or avoidable under the provisions of the Bankruptcy Code.  It is anticipated that the amount of this claim will be determined by the Court in resolution of an adversary action filed by Debtor objecting to the proof of claim Debtor anticipates U.S. Bank or AHPF or one of their agents or successors will file.  If the claim is an allowed

2

secured claim in any amount it is likely to be an allowed secured claim in the amount $50,000.00 or less.

       d.   <u>CLASS 4</u> - The claim filed and allowed, if any, of the City of Philadelphia for unpaid water bills due on 1228 East Mount Airy Avenue, Philadelphia, PA 19150.

       e.   <u>CLASS 5</u> - The claim filed and allowed as an allowed secured claim, if any, of the Philadelphia Gas works for unpaid gas bills due on  1228 East Mount Airy Avenue, Philadelphia, PA 19150.

       f.   <u>CLASS 6</u> - All other unsecured claims which are filed and allowed, including any allowed unsecured claims that are filed and allowed in favor of the Philadelphia Gas Works.

       g.   <u>CLASS 7</u> - All other claims which are not filed or are filed and disallowed or which are filed late.

       3.   The payments received by the trustee from the debtor pursuant to this plan shall be distributed as follows:

       a.   <u>CLASS 1 CLAIMS</u>:  The amount paid by the debtor to the trustee shall be distributed first to the Class 1 Claims claim of the Chapter 13 Standing Trustee until it is paid in full;

       b.   <u>CLASS 2 CLAIMS</u>:  No payments shall be made by the trustee to the holder of the filed and allowed Class 2 claim for mortgage arrears.  **This plan is not a cure plan and the plan**

3

**does not provide for Debtor to maintain current payments and cure the arrears**.

c.    <u>CLASS 3 CLAIMS:</u>  **No payments shall be made by the trustee to the holder of the Class 3 claims.  However**, to the extent the claim is am allowed secured claim within the meaning of 11 U.S.C. §506(a), secured by a lien on 1228 East Mount Airy Avenue, Philadelphia, PA 19150 , which is not void or avoidable, the holder of the claim shall retain its lien, to the extent it is not void, avoided, or subject to avoidance under 11 U.S.C. §506(d) or any other provisions of the Bankruptcy Code, and shall receive payments directly from the debtor pursuant to paragraphs 8 and 9 below;

d.    <u>CLASS 4 CLAIMS:</u>  No payments shall be made by the trustee the holder of the filed and allowed Class 4 claim, if any.  The claim is expressly not provided for by this plan within the meaning of 11 U.S.C. §§1325(a)(5) and 1328.

e.    <u>CLASS 5 CLAIMS:</u>  No payments shall be made by the trustee the holder of the filed and allowed Class 5 claim, if any.

f.    <u>CLASS 6 CLAIMS:</u>  After application of the appropriate amount to the holders of Class 1 claims, the trustee shall distribute all other amounts that come into his hands to the holders of the allowed Class 6 claims, including any unsecured claim of PGW, <u>pro rata,</u> until 100% of their claims have

4

been paid or until 5 years have elapsed from the commencement of payments, or until Debtor has paid the full amount required to be paid by her pursuant to paragraph 1 above, whichever occurs first.

Any money remaining in the hands of the trustee after the expiration of the plan shall be returned to the debtor.

g.   <u>CLASS 7 CLAIM</u>: The holders of Class 7 claims are provided for in this plan as follows: **No payments are to be made to the holders of Class 7 Claims.**

4.   This plan shall continue until Debtor has paid 100% of the allowed unsecured claims or until Debtor has paid a total of $300.00 to the chapter 13 Trustee, whichever first occurs.

5.   Confirmation of this plan shall constitute a finding that the plan constitutes the debtor's best effort under all the circumstances to pay the creditors, within the meaning of 11 U.S.C. §727(a)(9).

6.   Confirmation of this plan shall constitute a finding in accordance with 11 U.S.C. §1322(d) that there is cause for extending the plan beyond 3 years.  Confirmation shall also constitute approval of such extension.  Such extension is essential to the success of the plan.

7.   Confirmation of this plan shall constitute a finding that if U.S. Bank of AHPF is the holder of a secured

5

claim secured by a lien on 1228 East Mount Airy Avenue,
Philadelphia, PA 19150, either in its own right or as agent for
the holder of the claim, it is secured by an interest in personal
property as well as in real property and its rights may be
modified in accordance with ll U.S.C. §1322(b)(2).  In addition
because it is an obligation that is due within the life of the
plan it is subject to modification, 11 U.S.C. §1322(b)(2)
notwithstanding, pursuant to 11 U.S.C. §1322(c)(2).

8.   Within thirty days of the filing of this plan
Debtor shall commence making monthly payments in the amount set
forth in paragraph 10 below to U.S. Bank or AHPF or to such other
entity as the court determines is entitled to receive such
payments as the holder of the Class 3 claim.  These payments
shall constitute adequate protection payments until the amount of
Class 3 allowed secured claim is determined.  In the event the
total payments made pursuant to this paragraph and to paragraph 9
below exceed that amount of the allowed secured Class 3 claim as
determined by the court, U.S. Bank or AHFP or the recipient of
such payments, shall return such excess payments to Debtor.

9.   Commencing on the effective date of this plan, the
debtor shall pay directly to U.S. Bank or to AHPF, or to the
holder of the note and mortgage and the holder of the judgment in
mortgage foreclosure entered on the note and mortgage described
in paragraph 2.(c) above, the sum of $935.00 a month until 100%

6

of the allowed secured Class 3, as determined by the court in resolution of The Adversary Action or by agreement of the parties, is paid in full along with all accrued simple interest, calculated on the unpaid principal balance of the allowed secured claim from the effective date of the plan, at the rate of 3.5% simple interest *per annum*.  The unpaid principal balance of the allowed secured claim as of the effective date of the plan shall be calculated by subtracting from the amount of the claim allowed by the court in resolving the adversary, the sum of all adequate protection payments required by paragraph 8 above, as well as any additional lump sum payments that may be made on account of such allowed secured claim.

10.  Debtor shall be required to make no payments to or for the benefit of U.S. Bank or AHPF or any successor to or agent of either of them, or to or for the holder of the allowed secured class 3 claims other than those payments provided by paragraphs 8 and 9, supra.

11.  When Debtor has paid 100% of the allowed secured class three claim, plus all accrued interest, U.S. Bank or AHPF or the holder of the allowed secured claim if found to be other than U.S. Bank or AHPF, shall immediately, and without demand by Debtor, file a satisfaction piece with the Philadelphia Department or Records, noting that the mortgage has been

7

satisfied and shall mark satisfied the judgment in mortgage
foreclosure in the case referenced in paragraph 2(c) above.

12.   Confirmation of this plan shall constitute a
finding that the defaults, if any, which are cured by this plan
are cured within a reasonable time, within the meaning of 11
U.S.C. §1322(b)(5).

13.   **By failing to object to this plan, or any
modification thereof, all creditors holding claims agree not to
make any effort to collect their claims from any cosigners that
may exist, so long as this case remains pending, and further
agree to take no steps to collect their claims in any other forum
or in any manner inconsistent with this plan.**

14.   Confirmation of this plan shall constitute a
finding that the instant plan was proposed by the debtor in good
faith within the meaning of 11 U.S.C. §1325(a)(3)and constituted
Debtor's best effort within the meaning of 11 U.S.C. §727(a)(9)
and that Debtor's bankruptcy was filed in good faith within the
meaning of 11 U.S.C. §1325(a)(7).

15.   The current defaults if any by the debtor on the
Class 3 are waived.  The debtor is required to make no payments

to U.S. Bank of AHPF[1], other than that provided for in paragraph 8 and 9, *supra*.

16.    The lien of U.S.Bank or AHPF on 1228 East Mount Airy Avenue, Philadelphia, PA 19150, securing the allowed secured class 3 claim, shall survive the confirmation of the debtor's plan to the extent it is found to secure an allowed secured claim and is not void, avoided, or subject to avoidance.  Within 30 days of any order of the court or agreement by the parties resolving any adversary action filed by Debtor objecting to the proof of claim filed by U.S. Bank of AHPF for arrears or for the principal amount due under the mortgage note and judgment as aforesaid, U.S. Bank or AHPF, or its successor in interest, or principal, shall correct the records regarding Debtor's account to reflect the decision of the court or the agreement of the parties.  **U.S. Bank or AHPF AND ANY SUCCESSOR IN INTEREST SHALL BE SPECIFICALLY BARRED BY THE ORDER OF CONFIRMATION FROM ATTEMPTING IN ANY FORUM TO COLLECT FROM DEBTOR ON ACCOUNT OF ITS MORTGAGE AN AMOUNT THAT IS INCONSISTENT WITH ANY ORDER ENTERED BY THE COURT IN RESOLUTION OF AN ADVERSARY ACTION OR ANY STIPULATION OF THE PARTIES ENTERED IN SETTLEMENT OF SUCH AN ACTION.**

---

[1]    Reference to U.S. Bank and AHPF herein and in the succeeding paragraphs is intended to include reference to the holder of the allowed secured class 3 claim if the court determines that entity to be an entity other than either U.S. Bank of AHPF.

17.   The title to the debtor's interest in 1228 East
Mount Airy Avenue, Philadelphia, PA 19150, shall not revest in
the debtor until the completion of her chapter 13 plan.  However,
the debtor shall have sole right to the use and possession of the
property during the pendency of her bankruptcy.  When the
property revests in the debtor upon the entry of an order of
discharge, it shall vest in the debtor free and clear of all
claims of all creditors provided for by this plan.

18.  Confirmation of this plan shall constitute an
order that the debtor's continued possession of 1228 East Mount
Airy Avenue, Philadelphia, PA 19150, is essential to the success
of the debtor's plan and a finding that the debtor's plan would
likely fail if the debtor were forced to relinquish possession of
the property.

19.  Upon application or motion with appropriate notice
as required by the Federal Rules of Bankruptcy Procedure to
interested parties and to the Chapter 13 Trustee, the debtor may
alter the amount or timing of payments under this plan.  Such
modifications shall be permitted if they are reasonable and if
they do not decrease the total amount of money that will be paid
out to the Class 1, or Class 3 claimants.

20.  Any money or property acquired by either the
trustee or the debtor while this case is pending shall be deemed

10

exempt property of the debtor, if exemptible, and will be forthwith delivered to the debtor.

21.    Any money remaining in the hands of the trustee after this plan has terminated for any reason, shall be returned to the debtor.

22.    Upon completion of this plan, all debts listed in debtor's chapter 13 statement, except those excepted by 11 U.S.C. §1328(a)(1) or (a)(2), shall be discharged.

23.    **Commencing with the effective date of the plan Debtor shall maintain the current real estate tax payments and shall maintain hazard insurance on Debtor's home.  U.S. Bank nor AHPF nor either of their agents or successors nor the holder of the note and the mortgage on Debtor's home and judgment in mortgage foreclosure, shall make any payments on taxes on Debtor's home or for insurance on the property. Should U.S. Bank or AHPF or any of their agents or successors, or the holder of the note and the mortgage on Debtor's home or the judgment in mortgage foreclosure, directly or through an agent make such payments of real estate taxes or insurance, it shall do so as a volunteer, for its own benefit, and it shall have no recourse against Debtor for reimbursement of such payments.**

11

24.    Debtor shall maintain U.S. Bank or AHPF as a loss payee on the liability insurance policy on her home to the extent of the unpaid balance of the allowed secured class 3 claim.

25.    Confirmation of this plan shall constitute an order enjoining all creditors from taking any actions inconsistent with this plan and from attempting to proceed against the debtor in any other forum, **any orders proceeding the confirmation order to the contrary notwithstanding**.

26.    The **effective date** of this plan shall be the date of confirmation.

27.    The trustee's commission shall be limited to 10% of the sums actually distributed by him even if that amount is less than $5.00 a month.

Date: September 2, 2016          /S/ Irwin Trauss
                                 IRWIN TRAUSS, ESQUIRE
                                 Attorney for Debtor

                                 PHILADELPHIA LEGAL ASSISTANCE
                                 718 Arch Street, Suite 300N
                                 Philadelphia, PA 19102
                                 (215) 981-3811

# EXHIBIT B

# NOTE

October 6, 1995
[Date]

[City]    ,    [State]

1228 E MT AIRY AVE, PHILADELPHIA, PENNSYLVANIA 19150
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    23,500.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
COLONIAL NATIONAL BANK USA

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    11.450    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    15th    day of each month beginning on    November 15 1995    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    October 15, 2010    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. BOX 15473 WILMINGTON, DE 19850-5473
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    273.78    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.00    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
Form 3200 12/83
Amended 5/91
VMP  -5A  (9410)    Page 1 of 2
VMP MORTGAGE FORMS - (800)521-7291
TOWNSVILLE    48210262
Initials: A L T

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Anna L Townville_ _____(Seal)
ANNA  TOWNSVILLE                                -Borrower
SSN:  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

_____(Seal)
SSN:                                            -Borrower

_____(Seal)
SSN:                                            -Borrower

_____(Seal)
SSN:                                            -Borrower

*(Sign Original Only)*

Bankers Trust Company of California, NA
as custodian or trustee under the
applicable custody or trust
agreement.

Pay to the order of _____
without recourse Colonial National Bank USA

_James P. Fairy_

VICE PRESIDENT

# EXHIBIT C

WHEN RECORDED, MAIL TO:

COLONIAL NATIONAL BANK USA
16875 WEST BERNARDO DRIVE
SAN DIEGO, CA 92127
ATTN:  DOCUMENT CONTROL
Parcel Number:

RECORD AND RETURN TO
PROFESSIONAL ABSTRACT &
ASSURANCE CORP.
4600 STREET RD.
TREVOSE, PA 19053

PA26789

—————————————— [Space Above This Line For Recording Data] ——————————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on       October 6, 1995       . The mortgagor is
ANNA TOWNSVILLE

("Borrower"). This Security Instrument is given to

COLONIAL NATIONAL BANK USA

which is organized and existing under the laws of     UNITED STATES OF AMERICA                    , and whose
address is C/O 16875 WEST BERNARDO DRIVE, SAN DIEGO, CA  92127
                                                  ("Lender"). Borrower owes Lender the principal sum of
TWENTY THREE THOUSAND FIVE HUNDRED & 00/100

                                            Dollars (U.S. $      23,500.00   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on   October 15, 2010      . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
                                            Philadelphia                    County, Pennsylvania:

which has the address of     1228 E MT AIRY AVE , PHILADELPHIA               [Street, City],
Pennsylvania          19150         [Zip Code]  ("Property Address");
**PENNSYLVANIA - Single Family - FNMA/FHLMC**
     **UNIFORM INSTRUMENT**  Form 3039 9/90
     -6R(PA) (9410)              Amended 5/91
     VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6                    Initials:

TOWNSVILLE                          48210262

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected,

SITUATE in the Fiftieth Ward of the City of Philadelphia and described according to a Survey and Plan thereof made by Joseph F. Delany, Esquire, Surveyor and Regulator of the Fifth Survey District dated March 18, 1955, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Mt. Airy Avenue (Sixty feet wide) at the distance of Four Hundred One Feet Six inches Southwestwardly from the Southwesterly side of Thouron Avenue (Seventy Feet wide), thence extending from said point of beginning South Fifty-one Degrees Twenty-three minutes Eighteen Seconds East partly through the center of the party wall One Hundred Thirteen feet Two and Seven-eighths inches to a point on the center line of a certain Fifteen feet wide driveway, said driveway extending Southwestwardly from Thouron Avenue to Woolston Avenue, thence extending South Thirty-eight degrees Thirty-six minutes Forty-two seconds West along the center line of the said Fifteen feet wide driveway Sixteen feet Two inches to a point, thence extending North Fifty-one degrees Twenty-three minutes Eighteen seconds West partly through the center of the party wall One hundred Thirteen feet Four and Seven-eighths inches to a point on the Southeasterly side of Mt. Airy Avenue aforesaid, thence extending North Thirty-nine degrees Twelve minutes Twenty seconds East along the said side of Mt. Airy Avenue Sixteen feet Two inches to the first point and place of beginning.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse at all times hereafter, forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

BEING known as No. 1228 East Mt. Airy Avenue.

UNDER AND SUBJECT to certain Building Restrictions as now of record in Deed Book J.M.H. 2828 page 509.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

TOWNSVILLE    48210262

1811 339

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property;  Borrower's Loan  Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

TOWNSVILLE                    48210262

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.**   Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.**   The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.**   Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.**   The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.**   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.**   Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.**   This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

-6R(PA) (9410)                          Page 4 of 6                          Form 3039 9/90
                                                                             Initials: _____

TOWNSVILLE                                         48210262

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

TOWNSVILLE                                48210262

**24. Reinstatement Period.** Borrower's right to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other judicial sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
ANNA TOWNSVILLE                                        -Borrower
L.

_____

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                                       -Borrower

**Certificate of Residence**

I,
the within-named Mortgagee is                                  , do hereby certify that the correct address of

Witness my hand this                    day of

_____
                                                        Agent of Mortgage

**COMMONWEALTH OF PENNSYLVANIA,**                 Phila       County ss:

On this, the    6th    day of   October   , 1995     , before me, the undersigned officer, personally appeared    Anna L. Townsville

person[s]    whose name[s]   are   subscribed to the within instrument and acknowledged that    she   executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

NOTARIAL SEAL
BARBARA WERNERY, Notary Public
Bensalem Twp., Bucks County
My Commission Expires May 8, 1999

_____
Title of Officer

-6R(PA)(9410)                              Page 6 of 6                              Form 3039 9/90

TOWNSVILLE                              48210262

# EXHIBIT D

Recorded in Philadelphia Doc Id: 53168203
01/26/2017 03:14 PM    Page 1 of 2    Rec Fee: $220.00
Receipt#: 17-10693
Records Department    Doc Code: A

RETURN TO:
M. E. WILEMAN
2860 EXCHANGE BLVD, SUITE 100
SOUTHLAKE TX, 76092

PREPARED BY:
American Homeowner Preservation, LLC
819 S. Wabash Avenue Suite 606
Chicago, IL 60605

### CORPORATE ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned **American Homeowner Preservation Fund, LP** whose address is 53 W Jackson Blvd, Suite 1357, Chicago, IL 60604, hereby grants, assigns, and transfers unto **U.S. Bank Trust National Association, as Trustee of the American Homeowner Preservation Trust Series 2013C**, whose address is 819 S. Wabash Avenue, Suite 606, Chicago, IL 60605, its heirs, successors or assigns, of that certain Security Deed dated OCTOBER 6, 1995 executed by ANNA TOWNSVILLE (Borrower[s]) to **COLONIAL NATIONAL BANK USA**, in the original principal amount of $ 23,500.00 and recorded on DECEMBER 06, 1995, as MORTGAGE BOOK 1811 PAGE 366, in Official Records in the County Recorder's office of **CITY OF PHILADELPHIA, PA**, describing land herein as:  SEE ATTACHED "EXHIBIT A"

Property Address: 1228 E MT AIRY AVENUE, PHILADELPHIA, PA 19150

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed.

IN WITNESS WHEREOF, We have hereunto set our hands and affixed our seal on this ___8___ day of ___January___, 2014.

**American Homeowner Preservation Fund, LP**

NAME: Jorge Newbery
TITLE: Managing Member

Witness 1: Shawn Tde
Witness 2: Kenzi Kulovic

STATE OF ___Illinois___, COUNTY OF ___Cook___

On this ___8___ day of ___January___, 2014, before me, the undersigned, a Notary Public, in and for the County and State aforesaid, personally appeared Jorge Newbery to me known to be the identical person who subscribed the name of the maker to the foregoing instrument as its Managing Member of General Partner and acknowledged to me that ___✓___ executed the same as ___✓___ free and voluntary act and deed, and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.
Given under my hand and seal of office the day and year last above written.

NOTARY PUBLIC: Jacob J. Laffey

OFFICIAL SEAL
JACOB J LAFFEY
NOTARY PUBLIC – STATE OF ILLINOIS
MY COMMISSION EXPIRES MAY 14, 2017

The Assignee hereby certifies that precise address of the within named U.S. Bank Trust National Association, as Trustee of the American Homeowner Preservation Trust series 2013C is 819 S Wabash Avenue, Suite 606, Chicago, IL 60605

TOWNSVILLE, ANNA    *12095918

Loan #: 269226

## EXHIBIT "A"

Legal Description:

ALL THAT CERTAIN lot or piece of ground with the buildings and
improvements thereon erected,

SITUATE in the Fiftieth Ward of the City of Philadelphia and described
according to a Survey and Plan thereof made by Joseph F. Delany, Esquire,
Surveyor and Regulator of the Fifth Survey District dated March 18, 1955,
as follows, to wit:

BEGINNING at a point on the Southeasterly side of Mt. Airy Avenue (Sixty
feet wide) at the distance of Four Hundred One Feet Six inches
Southwestwardly from the Southwesterly side of Thouron Avenue (Seventy
Feet wide), thence extending from said point of beginning South Fifty-one
Degrees Twenty-three minutes Eighteen Seconds East partly through the
center of the party wall One Hundred Thirteen feet Two and Seven-eighths
inches to a point on the center line of a certain Fifteen feet wide
driveway, said driveway extending Southwestwardly from Thouron Avenue to
Woolston Avenue, thence extending South Thirty-eight degrees Thirty-six
minutes Forty-two seconds West along the center line of the said Fifteen
feet wide driveway Sixteen feet Two inches to a point, thence extending
North Fifty-one degrees Twenty-three minutes Eighteen seconds West partly
through the center of the party wall One hundred Thirteen feet Four and
Seven-eighths inches to a point on the Southeasterly side of Mt. Airy
Avenue aforesaid, thence extending North Thirty-nine degrees Twelve
minutes Twenty seconds East along the said side of Mt. Airy Avenue Sixteen
feet Two inches to the first point and place of beginning.

TOGETHER with the free and common use, right, liberty and privilege of the
aforesaid driveway as and for a driveway, passageway and watercourse at
all times hereafter, forever, in common with the owners, tenants and
occupiers of the other lots of ground bounding thereon and entitled to the
use thereof.

BEING known as No. 1228 East Mt. Airy Avenue.

UNDER AND SUBJECT to certain Building Restrictions as now of record in
Deed Book J.M.H. 2828 page 509.

# SCHEDULE A

 # SERVICING CORPORATION

**323 FIFTH STREET (95501)**
**P.O. BOX 35**
**EUREKA, CA  95502**
**(800) 603-0836**

October 24, 2017

ANNA TOWNSVILLE
1228 E MOUNT AIRY AVE
*PHILADELPHIA, PA 19150*
Your Reference:

Re:          3777
             ANNA TOWNSVILLE
             1228 EAST MOUNT AIRY AVENUE
             PHILADELPHIA, PA 19150

Pay off figures for the above referenced loan/borrower are:

| | |
|---|---:|
| Projected Payoff Date | 10/31/2017 |
| Principal Balance | $33,350.27 |
| Interest to 10/31/2017 | $29,847.77 |
| Other (See Attached Detail) | $3,379.92 |
| Prepayment Penalty | $0.00 |
| Funds owed by Borrower | $0.00 |
| Funds owed to Borrower | $0.00 |
| Total Payoff | $66,577.96 |
| Per diem | $  6.40 |

The next payment due is 02/18/2005.  The current interest rate is   7.00   % and the P&I payment is $ 229.16.

**PAY OFF INSTRUCTIONS/INFORMATION:**
- Pay off figures are subject to change so please call **800-603-0836** to update these figures prior to remitting funds.
- Funds received after 12:00 noon will be processed on the next business day and interest will be charged through that date.
- All pay off figures are subject to clearance of funds in transit.  The pay off is subject to final audit when presented.
- Please provide the borrower's forwarding address so any overpayment or refund can be directly mailed to the borrower.
- We will prepare the release of our interest in the property after all funds have cleared.

**REMITTANCE INFORMATION:**

**Make checks payable to:**      American Homeowner Preservation Trst Series 2015+A

**Mailing Address:**                                          **Express/Overnight Mail Address:**

SN Servicing Corporation                          **Bank of Texas**
American Homeowner Preservation Trst      **c/o Remittance Services, Dept 41548**
Series 2015+A                                            **2250 W State Hwy 114**
PO BOX 660820                                          **Grapevine, TX 76051**
DALLAS, TX 75266-0820

**Wiring Instructions:**

323 Fifth Street, P O Box 35, Eureka, CA 95501



# SN Servicing Corporation

## REINSTATEMENT LETTER

Main Office-NMLS #5985

Branch Office-NMLS #9785

| To: | Jody Lee | From: | PAYOFF DEPARTMENT |
| --- | --- | --- | --- |
| | | Pages: | |
| Fax: | | Date: | 10/24/17 |
| Re: | 3777 - Townsville | CC: | |

### Good Thru 10/31/2017 Post-Petition

| 15 | PAYMENTS DUE 08/18/16 thru 10/18/17 | $229.16 | 3,437.40 |
| --- | --- | --- | --- |
| | LATE CHARGES | | 67.91 |
| | FORECLOSURE EXPENSES | | 3,312.01 |
| | **REINSTATEMENT TOTAL** | | **$6,817.32** |

The following figures are subject to final verification by the note holder.  The mortgagee reserves the right to withhold
the issuance of the satisfaction of mortgage until all funds due are received by our office.

**PAY OFF INSTRUCTIONS/INFORMATION:**
- Pay off figures are subject to change so please call **800-603-0836** to update these figures prior to remitting funds.
- Funds received after 12:00 noon will be processed on the next business day and interest will be charged through that date.
- All pay off figures are subject to clearance of funds in transit.  The pay off is subject to final audit when presented.
- Please provide the borrower's forwarding address so any overpayment or refund can be directly mailed to the borrower.
- We will prepare the release of our interest in the property after all funds have cleared.

**REMITTANCE INFORMATION:**

Make checks payable to: **AHP-2015A+LLC**

**Mailing Address:**                              **Express Mail Address:**

SN Servicing Corporation                          Bank of Texas
AHP-2015A+LLC                                     c/o Remittance Services, Dept 41548
PO BOX 660820                                     2250 W State Hwy 114
Dallas, TX 75266                                  Grapevine, TX 76051

# SN Servicing Corporation

**PAYOFF DETAIL**

`3777

| DESCRIPTION OF OTHER | | AMOUNT |
|---|---|---|
| LATE CHARGES | | $67.91 |
| ATTORNEYS FEES | | $0.00 |
| FORECLOSURE EXPENSES | | $3,312.01 |
| LEGAL EXPENSES | | $0.00 |
| LEGAL BILLING | | $0.00 |
| FORCE PLACE INSURANCE | | $0.00 |
| FORCE PLACE FLOOD INSURANCE | | $0.00 |
| PRIOR SERVICER ESCROW ADV | | $0.00 |
| PRIOR SERVICER LATE FEES | | $0.00 |
| PRIOR SERVICER MISC FEES | | $0.00 |
| PRIOR SERVICER CORPORATE ADVANCE | | $0.00 |
| PRIOR SERVICER CORPORATE ADVANCE | | $0.00 |
| INTERIM CORP CORPORATE ADVANCE | | $0.00 |
| FORBEARANCE PRINCIPAL | | $0.00 |
| FORBEARANCE INTEREST | | $0.00 |
| FORBEARANCE LATE | | $0.00 |
| FORBEARANCE OTHER | | $0.00 |
| FORBEARANCE FORECLOSURE EXPENSES | | $0.00 |
| FORBEARANCE LEGAL FEES | | $0.00 |
| FORBEARANCE LEGAL EXPENSES | | $0.00 |
| FORBEARANCE ESCROW | | $0.00 |
| FORBEARANCE FORCE PLACE INSURANCE | | $0.00 |
| NSF FEES | | $0.00 |
| PROPERTY TAXES CURRENT | | $0.00 |
| PROPERTY TAXES DELINQUENT | | $0.00 |
| INSURANCE FIRE & CASUALTY | | $0.00 |
| ELECTRONIC PAYMENT FEE | | $0.00 |
| MISC FEES | | $0.00 |
| PROPERTY INSPECTIONS | | $0.00 |
| VERIFICATION OF MORTGAGE | | $0.00 |
| PRIOR FAX | | $0.00 |
| PRIOR RUSH | | $0.00 |
| PRIOR PAYOFF PROCESSING FEES | | $0.00 |
| DEFERRED PRINCIPAL | | $0.00 |
| | $3,379.92 | TOTAL |

**FUNDS OWED FROM BORROWER**

| | DESCRIPTION | AMOUNT |
|---|---|---|
| ASSISTANCE ADVANCE | Taxes | $0.00 |
| ASSISTANCE ADVANCE | | $0.00 |
| ASSISTANCE ADVANCE | | $0.00 |
| ESCROW ADVANCE | Short Payment | $0.00 |
| ESCROW ADVANCE | Taxes / PMI / Insurance | $0.00 |
| | $0.00 | TOTAL |

**FUNDS OWED TO BORROWER**

| | DESCRIPTION | AMOUNT |
|---|---|---|
| UNAPPLIED | | $0.00 |
| ESCROW | | $0.00 |
| INTEREST ON ESCROW | | $0.00 |
| OTHER FUNDS | | $0.00 |
| STIPULATION UNAPPLIED | | $0.00 |
| LOSS DRAFT | | $0.00 |
| | $0.00 | TOTAL |