IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | Case No. 16-15444-elf |
| Anna Lee Townsville | |
| _____ Debtor. | Chapter 13 |
| U.S. Bank National Association as Trustee of American Homeowner Preservation Trust Series 2013C., its assignees and/or successors in interest | |
| Movant, | |
| vs. | |
| Anna Lee Townsville William C. Miller, Esq., Chapter 13 Trustee, | |
| Respondents. | |

MOTION FOR RELIEF FROM AUTOMATIC STAY
AS TO PROPERTY KNOWN AS 1228 EAST MOUNT AIRY AVENUE IN PHILADEPHIA,
PENNSYLVANIA, 19150

U.S. Bank National Association as Trustee of American Homeowner Preservation Trust

Series 2013C., its assignees and/or successors in interest, by and through its attorney, Michael

Boland, files this Motion for Relief from Stay, Adequate Protection and other relief and for cause

states:

1. The Respondent-Debtor, Anna Lee Townsville, filed a Petition for relief under 11

U.S.C. Chapter 13 on August 01, 2016, Case Number 16-15444-elf, in the United States

Bankruptcy Court for the Eastern District of Pennsylvania. The Trustee is William C. Miller,

Esq. On September 02, 2016 the Respondent-Debtor filed their Chapter 13 Bankruptcy Plan,

attached hereto as **EXHIBIT A.** Under Sections 8 & 9 of the Respondent-Debtor's Chapter 13

Bankruptcy Plan, the Debtor specifically states that the Debtor was required to make payments to

the Movant. The debtor has failed to make any of the required payments under the plan.

2. This Court has jurisdiction over this contested matter pursuant to 11 U.S.C. §§ 105 and

362, 28 U.S.C. § 157, and Rule 9014 of the Bankruptcy Rules of Procedure.

3. The Debtor has executed and delivered or is otherwise obligated with respect to that

certain promissory note in the original principal balance of $23,500 ("the Note"). A copy of the

Note is attached hereto as **EXHIBIT B.** Movant is an entity entitled to enforce the Note.

4. Pursuant to that certain Mortgage dated May 30, 2007, and recorded in the office of the

county clerk of Philadelphia County, Pennsylvania ("the Mortgage"), all obligations (collectively

"the Obligaions") of the Debtor under and with respect to the Note and the Mortgage are secured

by Property. A copy of the Mortgage is attached hereto as **EXHIBIT C.**

5. All rights and remedies under the Mortgage have been assigned to the Movant

pursuant to an assignment of mortgage. A copy of the Assignment of Mortgage is attached hereto

as **EXHIBIT D**.

8. On May 29, 2015, Movant obtained an in rem Judgment in mortgage foreclosure

against Respondent, in the amount of $50,000, which was docketed under Case No. 01039 in the

April Term of 2012. *See* **EXHIBIT E** attached hereto.

9. In addition to the other amounts due to Movant reflected in this declaration, as of the

date hereof, in connection with seeking the relief requested in the Motion, Movant has also

incurred legal fees and costs. Movant reserves all rights to seek an award or allowance of such

fees and costs in accordance with applicable loan documents and related agreements, the

Bankruptcy Code and otherwise applicable law.

10. The estimated market value of the property is $151,732 [Zillow]. The Debtors claimed exemption of $23,675.00 in 2015.

11. Upon information and belief, the encumbrances on the property listed in the schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed in priority are: (I) Movant (Judgment); $50,000. There is no or inconsequential equity in the property.

12. Cause exists for relief from the automatic stay for the following reasons:

   a. Movant has a judgment against Respondent (See Exhibit E).

   b. The fair market value of the property is declining and payments are not being made the the Movant sufficient to protect Movant's interest against that decline.

   c. Pursuant to 11 U.S.C. § 362 (d)(2)(A), Debtor has inconsequential equity in the property; and pursuant to § 362(d)(2)(B), the property is not necessary for an effective reorganization.

WHEREFORE, the Movant, U.S. Bank National Association as Trustee of American Homeowner Preservation Trust Series 2013C., its assignees and/or successors in interest, prays that this Court issue an Order terminating or modifying the stay and granting the following:

A. Relief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited to allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the property.

B. That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

C. That the 14 Day Stay described by Bankruptcy Rule 4001(a)(3) be waived.

D. For such other and further relief as the Honorable Court deems proper.


Dated: September 19, 2017



Respectfully Submitted,

*/s/ Michael Boland*
Michael Boland
ID# 319999
1324 Locust Street #1602
Philadelphia, PA 19107
mbolandlegal@gmail.com
(610)781-4885

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: Anna Lee Townsville        :     CHAPTER 13
              Debtor               :     BANKRUPTCY NO. 16-15444

### CHAPTER 13 PLAN OF THE DEBTOR

1.    Debtor shall submit to the supervision and
control of the trustee the following sums:
During the first through the 60th month of the plan -- $5.00
monthly until a total of $300.00 has been paid to the trustee.

2.    The various claims of Debtor's creditors shall
be classified as follows:

a.    CLASS 1 - Claims filed and allowed which are
entitled to priority under 11 U.S.C. §507.  The administrative
costs of the trustee are the only priority claims or
administrative claims contemplated by this plan.  Any creditor
entitled to priority under §507 of the Bankruptcy Act contrary to
the provisions of this plan shall be deemed to have waived any
such priority, unless such entity timely objects to the plan
prior to the entry of the order of confirmation.

b.    CLASS 2 - The claim of U.S. Bank Trust N.A.
as Trustee (hereinafter "U.S. Bank")or American Homeowner
Preservation Fund, LP (hereinafter "AHPF") or the agent or
successor for either or both of them filed and allowed, for pre-
petition payment of principal, interest and insurance payments
actually expended which are due under the provisions of Debtor's

mortgage agreement originally with Colonial National Bank USA, including all such amounts which became legitimately due prior to the commencement of the above captioned case, to the extent that such claim is a secured claim within the meaning of 11 U.S.C. §506(a) secured by a lien on 1228 East Mount Airy Avenue, Philadelphia, PA 19150 which is not void or avoidable under the provisions of the Code and which is not for interest, fees, costs or charges which are not permitted under 11 U.S.C. §506(b);

      c.   <u>CLASS 3</u> - The claim, filed and allowed, by U.S. Bank or AHPF or the agent for wither of them or successor in interest for eiher for the **total unpaid balance**, **if any**, due on the judgment in mortgage foreclosure that was entered on that note and mortgage in the case of *U.S. Bank Trust National Association , as Owner Trustee v. Anna L. Townsville, C.C.P. Philadelphia County,  Donald, Phila. C.C.P. (F.J.D.) April Term 2012, No.01039* to the extent the allowed claim is a secured claim, within the meaning of 11 U.S.C. §506(a), secured by a lien on debtor's interest in 1228 East Mount Airy Avenue, Philadelphia, PA 19150 which is not void or avoidable under the provisions of the Bankruptcy Code.  It is anticipated that the amount of this claim will be determined by the Court in resolution of an adversary action filed by Debtor objecting to the proof of claim Debtor anticipates U.S. Bank or AHPF or one of their agents or successors will file.  If the claim is an allowed

secured claim in any amount it is likely to be an allowed secured claim in the amount $50,000.00 or less.

       d.    <u>CLASS 4</u> - The claim filed and allowed, if any, of the City of Philadelphia for unpaid water bills due on 1228 East Mount Airy Avenue, Philadelphia, PA 19150.

       e.    <u>CLASS 5</u> - The claim filed and allowed as an allowed secured claim, if any, of the Philadelphia Gas works for unpaid gas bills due on  1228 East Mount Airy Avenue, Philadelphia, PA 19150.

       f.    <u>CLASS 6</u> - All other unsecured claims which are filed and allowed, including any allowed unsecured claims that are filed and allowed in favor of the Philadelphia Gas Works.

       g.    <u>CLASS 7</u> - All other claims which are not filed or are filed and disallowed or which are filed late.

       3.    The payments received by the trustee from the debtor pursuant to this plan shall be distributed as follows:

       a.    <u>CLASS 1 CLAIMS</u>:  The amount paid by the debtor to the trustee shall be distributed first to the Class 1 Claims claim of the Chapter 13 Standing Trustee until it is paid in full;

       b.    <u>CLASS 2 CLAIMS</u>:  No payments shall be made by the trustee to the holder of the filed and allowed Class 2 claim for mortgage arrears.  **This plan is not a cure plan and the plan**

3

**does not provide for Debtor to maintain current payments and cure the arrears**.

c.   <u>CLASS 3 CLAIMS:</u>  **No payments shall be made by the trustee to the holder of the Class 3 claims.  However**, to the extent the claim is am allowed secured claim within the meaning of 11 U.S.C. §506(a), secured by a lien on 1228 East Mount Airy Avenue, Philadelphia, PA 19150 , which is not void or avoidable, the holder of the claim shall retain its lien, to the extent it is not void, avoided, or subject to avoidance under 11 U.S.C. §506(d) or any other provisions of the Bankruptcy Code, and shall receive payments directly from the debtor pursuant to paragraphs 8 and 9 below;

d.   <u>CLASS 4 CLAIMS:</u>  No payments shall be made by the trustee the holder of the filed and allowed Class 4 claim, if any.  The claim is expressly not provided for by this plan within the meaning of 11 U.S.C. §§1325(a)(5) and 1328.

e.   <u>CLASS 5 CLAIMS:</u>  No payments shall be made by the trustee the holder of the filed and allowed Class 5 claim, if any.

f.   <u>CLASS 6 CLAIMS:</u>  After application of the appropriate amount to the holders of Class 1 claims, the trustee shall distribute all other amounts that come into his hands to the holders of the allowed Class 6 claims, including any unsecured claim of PGW, <u>pro rata,</u> until 100% of their claims have

4

been paid or until 5 years have elapsed from the commencement of payments, or until Debtor has paid the full amount required to be paid by her pursuant to paragraph 1 above, whichever occurs first.

Any money remaining in the hands of the trustee after the expiration of the plan shall be returned to the debtor.

g.   <u>CLASS 7 CLAIM</u>: The holders of Class 7 claims are provided for in this plan as follows: **No payments are to be made to the holders of Class 7 Claims.**

4.   This plan shall continue until Debtor has paid 100% of the allowed unsecured claims or until Debtor has paid a total of $300.00 to the chapter 13 Trustee, whichever first occurs.

5.   Confirmation of this plan shall constitute a finding that the plan constitutes the debtor's best effort under all the circumstances to pay the creditors, within the meaning of 11 U.S.C. §727(a)(9).

6.   Confirmation of this plan shall constitute a finding in accordance with 11 U.S.C. §1322(d) that there is cause for extending the plan beyond 3 years.  Confirmation shall also constitute approval of such extension.  Such extension is essential to the success of the plan.

7.   Confirmation of this plan shall constitute a finding that if U.S. Bank of AHPF is the holder of a secured

5

claim secured by a lien on 1228 East Mount Airy Avenue,
Philadelphia, PA 19150, either in its own right or as agent for
the holder of the claim, it is secured by an interest in personal
property as well as in real property and its rights may be
modified in accordance with ll U.S.C. §1322(b)(2).  In addition
because it is an obligation that is due within the life of the
plan it is subject to modification, 11 U.S.C. §1322(b)(2)
notwithstanding, pursuant to 11 U.S.C. §1322(c)(2).

    8.    Within thirty days of the filing of this plan
Debtor shall commence making monthly payments in the amount set
forth in paragraph 10 below to U.S. Bank or AHPF or to such other
entity as the court determines is entitled to receive such
payments as the holder of the Class 3 claim.  These payments
shall constitute adequate protection payments until the amount of
Class 3 allowed secured claim is determined.  In the event the
total payments made pursuant to this paragraph and to paragraph 9
below exceed that amount of the allowed secured Class 3 claim as
determined by the court, U.S. Bank or AHFP or the recipient of
such payments, shall return such excess payments to Debtor.

    9.    Commencing on the effective date of this plan, the
debtor shall pay directly to U.S. Bank or to AHPF, or to the
holder of the note and mortgage and the holder of the judgment in
mortgage foreclosure entered on the note and mortgage described
in paragraph 2.(c) above, the sum of $935.00 a month until 100%

6

of the allowed secured Class 3, as determined by the court in resolution of The Adversary Action or by agreement of the parties, is paid in full along with all accrued simple interest, calculated on the unpaid principal balance of the allowed secured claim from the effective date of the plan, at the rate of 3.5% simple interest *per annum*.  The unpaid principal balance of the allowed secured claim as of the effective date of the plan shall be calculated by subtracting from the amount of the claim allowed by the court in resolving the adversary, the sum of all adequate protection payments required by paragraph 8 above, as well as any additional lump sum payments that may be made on account of such allowed secured claim.

10.  Debtor shall be required to make no payments to or for the benefit of U.S. Bank or AHPF or any successor to or agent of either of them, or to or for the holder of the allowed secured class 3 claims other than those payments provided by paragraphs 8 and 9, <u>supra</u>.

11.  When Debtor has paid 100% of the allowed secured class three claim, plus all accrued interest, U.S. Bank or AHPF or the holder of the allowed secured claim if found to be other than U.S. Bank or AHPF, shall immediately, and without demand by Debtor, file a satisfaction piece with the Philadelphia Department or Records, noting that the mortgage has been

7

satisfied and shall mark satisfied the judgment in mortgage
foreclosure in the case referenced in paragraph 2(c) above.

12.   Confirmation of this plan shall constitute a
finding that the defaults, if any, which are cured by this plan
are cured within a reasonable time, within the meaning of 11
U.S.C. §1322(b)(5).

13.   **By failing to object to this plan, or any
modification thereof, all creditors holding claims agree not to
make any effort to collect their claims from any cosigners that
may exist, so long as this case remains pending, and further
agree to take no steps to collect their claims in any other forum
or in any manner inconsistent with this plan.**

14.   Confirmation of this plan shall constitute a
finding that the instant plan was proposed by the debtor in good
faith within the meaning of 11 U.S.C. §1325(a)(3)and constituted
Debtor's best effort within the meaning of 11 U.S.C. §727(a)(9)
and that Debtor's bankruptcy was filed in good faith within the
meaning of 11 U.S.C. §1325(a)(7).

15.   The current defaults if any by the debtor on the
Class 3 are waived.  The debtor is required to make no payments

to U.S. Bank of AHPF[1], other than that provided for in paragraph 8 and 9, *supra*.

     16.    The lien of U.S.Bank or AHPF on 1228 East Mount Airy Avenue, Philadelphia, PA 19150, securing the allowed secured class 3 claim, shall survive the confirmation of the debtor's plan to the extent it is found to secure an allowed secured claim and is not void, avoided, or subject to avoidance.  Within 30 days of any order of the court or agreement by the parties resolving any adversary action filed by Debtor objecting to the proof of claim filed by U.S. Bank of AHPF for arrears or for the principal amount due under the mortgage note and judgment as aforesaid, U.S. Bank or AHPF, or its successor in interest, or principal, shall correct the records regarding Debtor's account to reflect the decision of the court or the agreement of the parties.  **U.S. Bank or AHPF AND ANY SUCCESSOR IN INTEREST SHALL BE SPECIFICALLY BARRED BY THE ORDER OF CONFIRMATION FROM ATTEMPTING IN ANY FORUM TO COLLECT FROM DEBTOR ON ACCOUNT OF ITS MORTGAGE AN AMOUNT THAT IS INCONSISTENT WITH ANY ORDER ENTERED BY THE COURT IN RESOLUTION OF AN ADVERSARY ACTION OR ANY STIPULATION OF THE PARTIES ENTERED IN SETTLEMENT OF SUCH AN ACTION.**

---

[1]  Reference to U.S. Bank and AHPF herein and in the succeeding paragraphs is intended to include reference to the holder of the allowed secured class 3 claim if the court determines that entity to be an entity other than either U.S. Bank of AHPF.

9

17.    The title to the debtor's interest in 1228 East
Mount Airy Avenue, Philadelphia, PA 19150, shall not revest in
the debtor until the completion of her chapter 13 plan.  However,
the debtor shall have sole right to the use and possession of the
property during the pendency of her bankruptcy.  When the
property revests in the debtor upon the entry of an order of
discharge, it shall vest in the debtor free and clear of all
claims of all creditors provided for by this plan.

18. Confirmation of this plan shall constitute an
order that the debtor's continued possession of 1228 East Mount
Airy Avenue, Philadelphia, PA 19150, is essential to the success
of the debtor's plan and a finding that the debtor's plan would
likely fail if the debtor were forced to relinquish possession of
the property.

19.    Upon application or motion with appropriate notice
as required by the Federal Rules of Bankruptcy Procedure to
interested parties and to the Chapter 13 Trustee, the debtor may
alter the amount or timing of payments under this plan.  Such
modifications shall be permitted if they are reasonable and if
they do not decrease the total amount of money that will be paid
out to the Class 1, or Class 3 claimants.

20.    Any money or property acquired by either the
trustee or the debtor while this case is pending shall be deemed

exempt property of the debtor, if exemptible, and will be
forthwith delivered to the debtor.

     21.    Any money remaining in the hands of the trustee
after this plan has terminated for any reason, shall be returned
to the debtor.

     22.  Upon completion of this plan, all debts listed in
debtor's chapter 13 statement, except those excepted by 11 U.S.C.
§1328(a)(1) or (a)(2), shall be discharged.

     23.  **Commencing with the effective date of the plan
Debtor shall maintain the current real estate tax payments and
shall maintain hazard insurance on Debtor's home.  U.S. Bank nor
AHPF nor either of their agents or successors nor the holder of
the note and the mortgage on Debtor's home and judgment in
mortgage foreclosure, shall make any payments on taxes on
Debtor's home or for insurance on the property. Should U.S. Bank
or AHPF or any of their agents or successors, or the holder of
the note and the mortgage on Debtor's home or the judgment in
mortgage foreclosure, directly or through an agent make such
payments of real estate taxes or insurance, it shall do so as a
volunteer, for its own benefit, and it shall have no recourse
against Debtor for reimbursement of such payments.**

11

24.  Debtor shall maintain U.S. Bank or AHPF as a loss payee on the liability insurance policy on her home to the extent of the unpaid balance of the allowed secured class 3 claim.

25.  Confirmation of this plan shall constitute an order enjoining all creditors from taking any actions inconsistent with this plan and from attempting to proceed against the debtor in any other forum, **any orders proceeding the confirmation order to the contrary notwithstanding**.

26.  The **effective date** of this plan shall be the date of confirmation.

27.  The trustee's commission shall be limited to 10% of the sums actually distributed by him even if that amount is less than $5.00 a month.


Date: September 2, 2016          /S/ Irwin Trauss
                                 IRWIN TRAUSS, ESQUIRE
                                 Attorney for Debtor

                                 PHILADELPHIA LEGAL ASSISTANCE
                                 718 Arch Street, Suite 300N
                                 Philadelphia, PA 19102
                                 (215) 981-3811

12

# EXHIBIT B

NOTE

October 6, 1995
[Date]

[City]                    [State]

1228 E MT AIRY AVE, PHILADELPHIA, PENNSYLVANIA 19150
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $        23,500.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
COLONIAL NATIONAL BANK USA

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of        11.450        %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the        15th        day of each month beginning on        November 15 1995        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on        October 15, 2010        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. BOX 15473 WILMINGTON, DE 19850-5473
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $        273.78

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        6.00 %
of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ANNA TOWNSVILLE                          -Borrower
SSN: 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

_____ (Seal)
SSN:                                     -Borrower

_____ (Seal)
SSN:                                     -Borrower

_____ (Seal)
SSN:                                     -Borrower

*(Sign Original Only)*

Bankers Trust Company of California, NA
as custodian or trustee under the
applicable custody or trust
agreement.

Pay to the order of _____
without recourse Colonial National Bank USA

VICE PRESIDENT

# EXHIBIT C

WHEN RECORDED, MAIL TO:

COLONIAL NATIONAL BANK USA
16875 WEST BERNARDO DRIVE
SAN DIEGO, CA 92127
ATTN:  DOCUMENT CONTROL
Parcel Number:

RECORD AND RETURN TO
PROFESSIONAL ABSTRACT &
ASSURANCE CORP.
4600 STREET RD.
TREVOSE, PA 19053

PA26789

---

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on      October 6, 1995                . The mortgagor is
ANNA TOWNSVILLE

("Borrower"). This Security Instrument is given to

COLONIAL NATIONAL BANK USA

which is organized and existing under the laws of   UNITED STATES OF AMERICA                      , and whose
address is C/O 16875 WEST BERNARDO DRIVE, SAN DIEGO, CA  92127
("Lender"). Borrower owes Lender the principal sum of
TWENTY THREE THOUSAND FIVE HUNDRED & 00/100

Dollars (U.S. $       23,500.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on   October 15, 2010              . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
Philadelphia                  County, Pennsylvania:

which has the address of     1228 E MT AIRY AVE , PHILADELPHIA                       [Street, City],
Pennsylvania       19150        [Zip Code]  ("Property Address");

PENNSYLVANIA - Single Family - FNMA/FHLMC
   UNIFORM INSTRUMENT   Form 3039 9/90
   -6R(PA) (9410)          Amended 5/91
   VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6                    Initials:

TOWNSVILLE                              48210262

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected,

SITUATE in the Fiftieth Ward of the City of Philadelphia and described according to a Survey and Plan thereof made by Joseph F. Delany, Esquire, Surveyor and Regulator of the Fifth Survey District dated March 18, 1955, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Mt. Airy Avenue (Sixty feet wide) at the distance of Four Hundred One Feet Six inches Southwestwardly from the Southwesterly side of Thouron Avenue (Seventy Feet wide), thence extending from said point of beginning South Fifty-one Degrees Twenty-three minutes Eighteen Seconds East partly through the center of the party wall One Hundred Thirteen feet Two and Seven-eighths inches to a point on the center line of a certain Fifteen feet wide driveway, said driveway extending Southwestwardly from Thouron Avenue to Woolston Avenue, thence extending South Thirty-eight degrees Thirty-six minutes Forty-two seconds West along the center line of the said Fifteen feet wide driveway Sixteen feet Two inches to a point, thence extending North Fifty-one degrees Twenty-three minutes Eighteen seconds West partly through the center of the party wall One hundred Thirteen feet Four and Seven-eighths inches to a point on the Southeasterly side of Mt. Airy Avenue aforesaid, thence extending North Thirty-nine degrees Twelve minutes Twenty seconds East along the said side of Mt. Airy Avenue Sixteen feet Two inches to the first point and place of beginning.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse at all times hereafter, forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

BEING known as No. 1228 East Mt. Airy Avenue.

UNDER AND SUBJECT to certain Building Restrictions as now of record in Deed Book J.M.H. 2828 page 509.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.**    Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.**    Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.**    Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.**    Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

TOWNSVILLE                                      48210262

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property;  Borrower's Loan  Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.**   Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.**   The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.**   Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The  covenants  and  agreements  of  this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.**   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.**   Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.**   This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

-6R(PA) (9410)

Form 3039  9/90
Initials: _____

TOWNSVILLE                                    48210262

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

-6R(PA)(9410)                                    Page 5 of 6

Form 3039  9/90
Initials:

TOWNSVILLE                                48210262

**24. Reinstatement Period.** Borrower's right to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.**   Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Riders to this Security Instrument.**   If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- ☐ Adjustable Rate Rider
- ☐ Graduated Payment Rider
- ☐ Balloon Rider
- ☐ VA Rider
- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Rate Improvement Rider
- ☐ Other(s) [specify]
- ☐ 1-4 Family Rider
- ☐ Biweekly Payment Rider
- ☐ Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _Anna L. Townsville_____ (Seal)
Barbara Wernery                       ANNA TOWNSVILLE              -Borrower
                                      L.

                                     _____ (Seal)
                                                                      -Borrower

_____ (Seal)       _____ (Seal)
                -Borrower                                             -Borrower

**Certificate of Residence**

I, _____ , do hereby certify that the correct address of
the within-named Mortgagee is _____ .

Witness my hand this _____ day of _____, _____.

                                                        _____
                                                        Agent of Mortgagee

COMMONWEALTH OF PENNSYLVANIA,         Phila    County ss:

On this, the 6th day of October , 1995 , before me, the undersigned officer,
personally appeared Anna L. Townsville

person ____ whose name ____ are subscribed to the within instrument and acknowledged that __she__
executed the same for the purposes herein contained.

known to me (or satisfactorily proven) to be the

IN WITNESS WHEREOF, I hereunto set my hand and official seal. Barbara Wernery
My Commission Expires:

┌─────────────────────────────────┐
│        NOTARIAL SEAL            │
│ BARBARA WERNERY, Notary Public  │     _____
│  Bensalem Twp., Bucks County    │     Title of Officer
│ My Commission Expires May 8, 1999│
└─────────────────────────────────┘

-6R(PA)(9410)                    Page 6 of 6                    Form 3039 9/90

                    TOWNSVILLE                    48210262

# EXHIBIT D

Recorded in Philadelphia Doc Id: 53168203
01/26/2017 03:14 PM    Page 1 of 2    Rec Fee: $220.00
Receipt#: 17-10693
Records Department    Doc Code: A

RETURN TO:
M. E. WILEMAN
2860 EXCHANGE BLVD, SUITE 100
SOUTHLAKE TX, 76092

PREPARED BY:
American Homeowner Preservation, LLC
819 S. Wabash Avenue Suite 606
Chicago, IL 60605

## CORPORATE ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned **American Homeowner Preservation Fund, LP** whose address is 53 W Jackson Blvd, Suite 1357, Chicago, IL 60604, hereby grants, assigns, and transfers unto **U.S. Bank Trust National Association, as Trustee of the American Homeowner Preservation Trust Series 2013C**, whose address is 819 S. Wabash Avenue, Suite 606, Chicago, IL 60605, its heirs, successors or assigns, of that certain Security Deed dated OCTOBER 6, 1995 executed by ANNA TOWNSVILLE (Borrower[s]) to **COLONIAL NATIONAL BANK USA** in the original principal amount of $ 23,500.00 and recorded on DECEMBER 06, 1995, as MORTGAGE BOOK 1811 PAGE 366, in Official Records in the County Recorder's office of **CITY OF PHILADELPHIA, PA**, describing land herein as: SEE ATTACHED "EXHIBIT A"

Property Address: 1228 E MT AIRY AVENUE, PHILADELPHIA, PA 19150

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed.

IN WITNESS WHEREOF, We have hereunto set our hands and affixed our seal on this ____8____ day of ____January____, 2014.

**American Homeowner Preservation Fund, LP**

NAME: Jorge Newbery
TITLE: Managing Member

Witness 1: Shawn Tate
Witness 2: Kenzi Kulavait

STATE OF ____Illinois____, COUNTY OF ____Cook____

On this __8__ day of ____January____, 2014, before me, the undersigned, a Notary Public, in and for the County and State aforesaid, personally appeared Jorge Newbery to me known to be the identical person who subscribed the name of the maker to the foregoing instrument as its Managing Member of General Partner and acknowledged to me that ___✓___ executed the same as ___✓___ free and voluntary act and deed, and as the free and voluntary act and deed of such corporation, for the uses and purposes therein set forth.
Given under my hand and seal of office the day and year last above written.

NOTARY PUBLIC: Jacob J. Laffey

```
OFFICIAL SEAL
JACOB J LAFFEY
NOTARY PUBLIC – STATE OF ILLINOIS
MY COMMISSION EXPIRES MAY 14, 2017
```

The Assignee hereby certifies that precise address of the within named U.S. Bank Trust National Association, as Trustee of the American Homeowner Preservation Trust series 2013C is
819 S Wabash Avenue, Suite 606, Chicago, IL 60605
KMasim

TOWNSVILLE, ANNA    *12095918

Loan #: 269226

## EXHIBIT "A"

Legal Description:

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected,

SITUATE in the Fiftieth Ward of the City of Philadelphia and described according to a Survey and Plan thereof made by Joseph F. Delany, Esquire, Surveyor and Regulator of the Fifth Survey District dated March 18, 1955, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Mt. Airy Avenue (Sixty feet wide) at the distance of Four Hundred One Feet Six inches Southwestwardly from the Southwesterly side of Thouron Avenue (Seventy Feet wide), thence extending from said point of beginning South Fifty-one Degrees Twenty-three minutes Eighteen Seconds East partly through the center of the party wall One Hundred Thirteen feet Two and Seven-eighths inches to a point on the center line of a certain Fifteen feet wide driveway, said driveway extending Southwestwardly from Thouron Avenue to Woolston Avenue, thence extending South Thirty-eight degrees Thirty-six minutes Forty-two seconds West along the center line of the said Fifteen feet wide driveway Sixteen feet Two inches to a point, thence extending North Fifty-one degrees Twenty-three minutes Eighteen seconds West partly through the center of the party wall One hundred Thirteen feet Four and Seven-eighths inches to a point on the Southeasterly side of Mt. Airy Avenue aforesaid, thence extending North Thirty-nine degrees Twelve minutes Twenty seconds East along the said side of Mt. Airy Avenue Sixteen feet Two inches to the first point and place of beginning.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse at all times hereafter, forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

BEING known as No. 1228 East Mt. Airy Avenue.

UNDER AND SUBJECT to certain Building Restrictions as now of record in Deed Book J.M.H. 2828 page 509.

# EXHIBIT E

COMMON PLEAS COURT OF PHILADELPHIA
TRIAL DIVISION - CIVIL
TRIAL WORKSHEET

```
+----------------------------------------------------------------------+
| Event: TRIAL READY POOL           , at 05/04/2015 09:00 in CH-243     |
| Scheduled: 06/25/2014 , JURY    MR - MORTGAGE FORECLOSURE             |
+----------------------------------------------------------------------+
| Judge's Name:                         Signature:                     |
|              Rary I. Djerassi      X                                  |
+----------------------------------------------------------------------+
| Caption:                                        Case Type:           |
|           U.S. BANK TRUST N.A. VS TOWNSVILLE     3D -                 |
|                                                  RESIDENTIA          |
|                                                  L OWNER             |
| Term and Number:    If Consolidated:            OCCUPIED             |
| #1204-01039           Term and Number(s)        MR                   |
+----------------------------------------------------------------------+
| TRIAL      ACTUAL:        TOTAL AMOUNT    NUMBER OF    DATE SHEET     |
| DATE: 5/29/15  ( ) JURY    IN Rem         DAYS        PREPARED       |
|             (X) NON-JURY    50,000         1          5/29/15        |
+----------------------------------------------------------------------+
| Disposition Date:         May 29, 2015                               |
+----------------------------------------------------------------------+
| FULL DESCRIPTION OF DISPOSITION (To Be Entered VERBATIM On The Docket): |
|                                                                      |
|         Listed for Jury Trial.                                       |
|                                                                      |
|      Judgment by Agreement under                                     |
|                                                                      |
|    Terms of stipulation of settlement.                               |
|                                                                      |
|    See enclosure.                                                    |
+----------------------------------------------------------------------+
```

( ) DEFAULT JUDGMENT/COURT ORDERED
( ) DIRECTED VERDICT
( ) DISCONTINUANCE ORDERED
( ) TRANSFER TO BINDING
    ARBITRATION

( ) FINDING FOR DEFENDANT (NON-JURY)
( ) FINDING FOR PLAINTIFF (NON-JURY)

( ) DAMAGES ASSESSED

(√) JUDGMENT ENTERED BY AGREEMENT
( ) JUDGMENT ENTERED
( ) JUDGMENT SATISFIED

( ) JURY VERDICT FOR PLAINTIFF
( ) JURY VERDICT FOR DEFENDANT
( ) MISTRIAL
( ) HUNG JURY

( ) NON-PROS ENTERED
( ) NON-SUIT ENTERED
( ) SETTLED PRIOR TO ASSIGNMENT FOR
    TRIAL    (TEAM LEADERS,only)

( ) SETTLED AFTER ASSIGNMENT FOR TRIAL
    ( )PRIOR TO JURY SELECTION
    ( )AFTER JURY SWORN

( ) OTHER (EXPLAIN)_____

(CONTINUED NEXT PAGE)

DOCKETED
COMPLEX LIT CENTER

JUN 1 2015

J. STEWART

U.S. Bank Trust N.A. Vs-WSJDA

12040103900088

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  J. STEWART  06/02/2015

**IN THE COURT OF COMMON PLEAS
COUNTY OF PHILADELPHIA
CIVIL TRIAL DIVISION**

| | | |
|---|---|---|
| **U.S. Bank Trust N.A. as Trustee** | : | |
| *Plaintiff* | : | |
| | : | **April Term, 2012** |
| **v.** | : | |
| | : | **No. 01039** |
| **Anna L. Townsville** | : | |
| *Defendant* | : | |

**ORDER**

And now, this 29th day of May, 2015, the above-captioned matter having been reported

by the parties as Settled, it is hereby ORDERED and DECREED that:

1. The Stipulation of Settlement resolving the above-captioned matter is approved;

2. An *in rem* judgment in mortgage foreclosure on the property located at 1228 East Mount

   Airy Avenue, Philadelphia, PA 19150, in the amount of $50,000.00 is entered in favor of

   Plaintiff;

3. Enforcement of the judgment shall be subject to the terms of the aforementioned

   Stipulation of Settlement.

By the Court:

_____

Ramy I. Djerassi, J.

U.S. Bank Trust N. A. as Trustee     :     COURT OF COMMON PLEAS
     Plaintiff

                 PHILADELPHIA COUNTY

               :
     v.                April Term 2012


Anna L. Townsville         :     NUMBER 01039
     Defendant

### STIPULATION OF SETTLEMENT

I.    In consideration for the mutual agreements contained herein including, without limitation, the promise by American Homeowner Preservation Fund, LP , (hereinafter "Lender") to satisfy the Mortgage and Note, Ana L. Townsville (hereinafter "Borrower") has agreed to pay Fifty Thousand Dollars ($50,000) to American Homeowner Preservation Fund, LP [or appropriate entity] within 180 days of the date of the Effective Date of this stipulation.  This 180 days shall run from the Effective Date, any provision of the Consent Order referred to below to the contrary notwithstanding.  The "Effective Date" is defined herein as the date on which this stipulation of settlement is approved by the court and docketed on the Court of Common Pleas docket.


II. Borrower further agrees to the entry of an in rem judgment in mortgage foreclosure in the above captioned case in favor of American Homeowner Preservation Fund, LLP in the amount of $50,000.00.

III. Lender agrees to take no action to execute the judgment for a period of 6 months from the Effective Date and further agrees to not obtain a writ of execution until after the expiration of a 30 day grace period at the end of the six months.

IV.  Immediately upon the Effective Date, Borrower shall apply for a reverse mortgage sufficient to enable Borrower to pay Lender the $50,000.00 under this agreement.

V.    Borrower shall take all the steps which are under her control to complete the application for a reverse mortgage, including completing all required counseling, paying all up front application costs, allowing for the completion of all appraisals and home inspections and addressing any title concerns raised by the Reverse Mortgage Lender within seventy-five (75) days of the effective date of this agreement.

VI.    In the event Borrower makes the Fifty Thousand Dollar ($50,000) payment to Lender as provided above in paragraph 1 *at any time before the completion of the sheriff sale of the property that is the subject of the captioned action in foreclosure, then within thirty (30) days of the receipt of payment, Lender shall:

    **A.** Provide Borrower with the original Note marked "Paid" or "Satisfied".

*or satisfies the judgment in accordance with paragraph VII

     **B.**     Record with the Recorder of Deeds of Philadelphia County, at Lender's own cost, a Satisfaction Piece reflecting that the Mortgage is satisfied.

     **C.**     File the necessary praecipe to mark the judgment in mortgage foreclosure satisfied with the Philadelphia Court of Common Pleas.

VII.     In the event Borrower does not make the Fifty Thousand Dollar ($50,000) payment to Lender identified above in 1 by the expiration of the grace period, Lender shall be free to obtain a writ of execution on its judgment. However, Borrower will be able to satisfy the judgment at anytime up to the completion of a sheriff sale of the property, whenever that may occur.

VIII.     The parties agree to submit to the Court for its approval the Consent Order attached hereto as "Exhibit A".

IX.    **Attorney's Fees**: The Parties shall bear their own attorney's fees and costs incurred. If any Party commences any action arising out of this Agreement, including, without limitation, any action to enforce or interpret this Agreement, the prevailing party or parties in such action shall be entitled to recover its reasonable attorney's fees and other expenses actually incurred in such action. Any award of attorney's fees shall be computed by the court in accordance with the standards regularly used by the court calculating fees under fee shifting statutes.

X.    **Mutual Release**: The Parties hereby forever and fully release, acquit, and discharge each of the other Parties and their attorneys, officers, directors, shareholders, employees, agents, parents, subsidiaries and affiliates, personal representatives, predecessors, successors, and assigns, beneficiaries and investors in the subject Loan, including without limitation Lender and its predecessors, successors or assigns, and each of them, in their capacity as such, of and from any and all claims, demands, actions, causes of action, suits, liens, debts, obligations, damages, liabilities, and judgments of any kind, nature, or amount, whether in tort, contract, or otherwise, whether in law or equity, whether known or unknown, anticipated or unanticipated, liquidated or unliquidated, including, without limitation, any and all claimed or unclaimed compensatory damages, consequential damages, incidental damages, punitive and exemplary damages, interest costs, expenses and fees (including, without limitation, reasonable attorney's fees) existing as of the Effective Date; *provided, however*, this release does not include any claims relating to any other property based on any other Note.

XI.    **Credit Reporting:** Within thirty (30) days of Borrower making the Fifty Thousand Dollar ($50,000.00) payment to Lender identified above in 1, Lender through its servicing agent, will submit Universal Data Forms to the credit reporting agencies to which it regularly reports, reporting the loan as "disputed resolved by agreement". Borrower acknowledges and agrees that the credit reporting agencies are separate entities from Lender and that Lender cannot guarantee, warrant, or take responsibility for the performance of the credit reporting agencies in changing, deleting, or making entries in relation to any credit information. Borrower warrants, declares, and covenants that he/she understands the limitations on Lender in this regard and that any action or inaction on the part of the credit reporting agencies shall not constitute a breach of this Agreement by Lender, nor shall it provide the basis for any claims against Lender, which claims are hereby specifically and expressly waived, discharged and released. This paragraph shall not

be applicable if there has been no adverse credit reference made to any credit reporting agencies and if Lender does not normally do credit reporting or has not made any credit report to any agency concerning this account.

XII.    **Release of Unknown Claims**: The Parties acknowledge and agree that they may hereafter discover facts different from, or in addition to, those facts known to them or which they now believe to be true with respect to any and all of the claims, demands, actions, causes of action, suits, liens, debts, obligations, damages, liabilities, judgments, costs, expenses, and fees (including reasonable attorney's fees) existing on the Effective Date of this Agreement. The Parties nevertheless agree that the releases set forth herein have been negotiated and agreed upon, notwithstanding such acknowledgment and agreement, and hereby expressly waive any and all rights which they may have, the one against the other, under any federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution. Each of the Parties understands and acknowledges the significance and consequences of this waiver and assumes full responsibility for any and all damages, losses, costs, and expenses such Party may incur hereafter as a result of any of the facts, matters, and events referred to in the Recitals set forth above.

XIII.   **Release Limitations:** This Agreement does not release: (1) claims arising out of the failure of either Party to perform in conformity with the terms of this Agreement; (2) any future disputes between Borrower and Lender.

XIV.    **Warranties and Representations:** The Parties each warrant and represent that (a) she or it is the sole owner of all rights and claims, damages, actions, causes of action, suits and defenses, as the case may be, at law or in equity she or it has or may have or that were asserted or could have been asserted in the Action, including, without limitation, those arising out of the Note and Mortgage; and (b) she or it has not assigned, transferred, conveyed, or purported to assign, transfer, or convey to any person or entity any right, claim, action, cause of action, suit (at law or in equity), defense, demand, debt, liability, account, or obligation herein released, or any part thereof, or which would, absent such assignment, transfer or conveyance, be subject to the releases set forth in this Agreement.

XV.     **Acknowledgments**: Each of the Parties acknowledges and agrees that:


    a.    This Agreement is entered into and executed voluntarily by each of the Parties and without any duress or undue influence on the part of, or on behalf of, any such Party.

    b.    Each of the Parties has been represented by counsel of her or its own choice, or has had the opportunity to be represented by counsel and to seek advice in connection with the negotiations for, and in the preparation of, this Agreement and that she or it has read this Agreement and that she or it is fully aware of its contents and legal effects. All Parties who are representing themselves are warned to obtain the advice of an attorney before signing this Agreement.

    c.    The drafting and negotiation of this Agreement has been undertaken by all

Parties and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by all of the Parties with no presumption in favor of one Party over another in the event of any ambiguity.

XVI. **Tax Consequences**: This Agreement is enforceable regardless of its tax consequences. The Parties understand and agree that the covenants and payments set forth in this Agreement reflect the settlement of disputed legal claims and that Lender and Borrower make no representations regarding the Agreement's tax consequences. The Parties, however, specifically agree that each of them is solely responsible for any and all taxes, interest and penalties due and owing, if any, from either of them, as a result of this Agreement. The Parties further agree that Borrower is solely responsible for any taxes on the Property.

XVII.       **Compromise of Disputed Claims:** It is understood and agreed that this Agreement is the compromise of disputed claims, and that the terms of settlement contained herein and the releases executed are not intended to be and shall not be construed as admissions of any liability or responsibility whatsoever and each released Party expressly denies any liability or responsibility whatsoever.

XVIII.       **Severability:**  If any of the provisions of this Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions shall not be affected thereby.

XIX. **Binding Effect:**  This Agreement shall be binding on, and shall inure to the benefit of, the Parties and their respective administrators, representatives, successors, and assigns.

XX.        This Agreement shall be governed by the laws of the State of Pennsylvania and any question arising hereunder shall be construed or determined according to such law.

XXI.        Further Assurances: The Parties agree to do all acts and things and to make, execute, acknowledge and deliver such written documents, instructions and/or instruments in such form as shall from time to time be reasonably required to carry out the terms and provisions of this Agreement, including but not limited to, the execution, filing or recording of any reporting documents, affidavits, deeds or agreements. The Parties agree to give reasonable cooperation and assistance to any other party or parties hereto in order to enable such other Party or Parties to secure the intended benefits of this Agreement.

XXII.       **Counterparts:** This Agreement may be executed by the Parties in any number of counterparts, including by way of facsimile, and each of which shall be deemed to be an original and all of which, collectively, shall be deemed to be one and the same instrument.

XXIII.       **Integration Clause:**  This Agreement contains the entire agreement between and among the Parties, and supercedes all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, between or among them relating to the subject matter of this Agreement.  This Agreement may not be amended orally, nor shall any purported oral amendment (even if accompanied by partial or complete performance in accordance therewith) be of any legal force or effect or constitute an amendment

of this Agreement, but rather this Agreement may be amended only by an agreement in writing signed by the Parties. This Agreement, however, shall not supersede the consent order entered by the court in the Action, except as expressly provided herein, a copy of which is attached hereto as an Exhibit. This consent order is a part of this Agreement and the terms of this Agreement shall be construed in a manner that is consistent with the Consent Order.

XXIV.     **Time Is Of The Essence:** Time is of the essence with respect to the performance of any and all provisions of this Agreement.

XXV.      **Headings and Captions:** The headings and captions inserted into this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

Intending to be legal bound thereby, the parties to the above captioned action by their respective counsel set their signatures below:

Dated: _____, 2015

By: _____
Attorney for Borrower
IRWIN L. Trauss, Esq.

Dated: _____, 2015

By: _____
Attorneys for Lender
Thomas I. Puleo, Esq.

Approved:

Date:      _____
J.
May 29, 2015          Djerassi